Filed 9/30/08                    NO. 4-07-1079

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

| | | |
|---|---|---|
| In re:  the Estates of HAROLD A. MARKERT, | ) | Appeal from |
| Deceased, and JUANITA W. MARKERT, Deceased, | ) | Circuit Court of |
| JAMES R. INGHRAM, the Trustee of the | ) | Brown County |
| Bankruptcy Estate of Anthony L. Markert, | ) | No. 05CH4 |
| Proposed Intervenor, | ) | |
|      Petitioner-Appellee, | ) | |
|      v. | ) | |
| ANTHONY L. MARKERT, TODD A. MARKERT, | ) | |
| CHAD M. MARKERT, KARA S. MARKERT, and | ) | Honorable |
| KURT J. MARKERT, | ) | Alesia A. McMillen, |
|      Respondents-Appellants. | ) | Judge Presiding. |

_____

PRESIDING JUSTICE APPLETON delivered the opinion of the court:

Defendants, Anthony L. Markert, Todd A. Markert, Chad M. Markert, Kara

S. Markert, and Kurt J. Markert, appeal from a summary judgment against themselves

and in favor of plaintiff, James R. Inghram, the trustee of Anthony's bankruptcy estate.

The trial court held that Anthony's conveyance of property to the other four defendants,

his children, violated section 6(a) of the Uniform Fraudulent Transfer Act (Act) (740

ILCS 160/6(a) (West 2004)).  Defendants have not shown us a genuine issue of material

fact as to any of the elements of section 6(a), and we conclude that plaintiff is entitled to

judgment as a matter of law.  See 735 ILCS 5/2-1005(a), (c) (West 2004).  In our de

novo review (Schillerstrom Homes, Inc. v. City of Naperville, 198 Ill. 2d 281, 286, 762

N.E.2d 494, 497 (2001)), we affirm the summary judgment.

# I. BACKGROUND

Anthony owned an undivided one-fifth interest in farmland in Brown County, Illinois. He had received this ownership interest from his father, Harold A. Markert. Apparently, defendant farmed ground for his father, and his mother, Juanita W. Markert; it is unclear in what capacity he did so. Both Harold and Juanita are deceased, and at the time of the disputed conveyance, their estates were still in probate. The legal description of Anthony's ownership interest in the farmland was as follows:

"An undivided 1/5 interest in: The Northeast Quarter of Section Number Eleven (11) in Township One (1) South of the Baseline, Range Four (4) West of the Fourth Principal Meridian, situated in the County of Brown, in the State of Illinois, EXCEPT Two and One-half (2 1/2) acres off the South side of said tract of land, AND ALSO EXCEPT the right-of-way of the Wabash Railroad Company through and across said tract of land, AND ALSO EXCEPT Commencing at the Southeast corner of said Northeast Quarter; thence North on the East line of said Northeast Quarter 101.25 feet to a point on the North right-of-way line of Route #24; thence West on said North Right of Way line 33 feet to the true point of beginning; thence North parallel to the East line of said Quarter Section and along the West line of an existing 33 feet roadway 135 feet to a point; thence West parallel to the South line of said Northeast Quarter 481 feet to a point;

thence South parallel to the East line of said Northeast Quarter 135 feet, more or less, to the North right-of-way line of Route #24; thence East along the North right-of-way line of said Route #24, 481 feet, more or less, to the true point of beginning, together with the right of ingress and egress over said existing 33 feet roadway running along the East line of the above described premises ***."

By quitclaim deed on April 13, 2004, Anthony conveyed this one-fifth interest to his children in return for their oral agreement to assume responsibility for the mortgage on this interest. The children paid him no cash consideration. In their brief, defendants do not dispute that the conveyance was for inadequate consideration.

On September 20, 2005, in case No. 05-75094 in the Central District of Illinois, Anthony filed a petition for a chapter 7 bankruptcy. 11 U.S.C. § 701 et seq. (2002). The bankruptcy petition is in the record. In their brief, defendants cite the schedules of the bankruptcy petition as proof that Anthony was not insolvent in April 2004, when he conveyed the one-fifth interest in the farmland, and that the conveyance, therefore, was not constructively "fraudulent" under section 6(a) of the Act (740 ILCS 160/6(a) (West 2004)). We understand defendants to be suggesting that these schedules accurately reflect Anthony's financial situation at the time of the conveyance. Defendants itemize Anthony's assets as follows:

| | | |
|---|---|---|
| Cash | $ | 100 |
| Checking Account | $ | 319 |
| Household Goods | $ | 800 |
| Clothing | $ | 75 |
| Interest in Parents' Estates | $ | 200,000 |
| Truck | $ | 1,200 |
| Tools | $ | 400 |
| Equity in One-Fifth Interest in Farmland | $ | 20,000 |
| Claim Against Parents' Estates for Agricultural Supplies | $ | 38,000 |
| TOTAL | $ | 260,894 |

Defendants itemize Anthony's debts as follows:

| | | |
|---|---|---|
| Armtech Insurance | $ | 1,205 |
| Capital Bank | $ | 809 |
| First Premier Bank | $ | 368 |
| Household Credit Services | $ | 2,685 |
| HSBC Card Services | $ | 1,239 |
| HSBC Card Services | $ | 766 |
| Pro Com Services of Illinois | $ | 5,384 |
| Professional Adjustment Bureau | $ | 71,333 |
| Providian Processing Services | $ | 881 |
| Providian Processing Services | $ | 5,578 |
| Randall L. Leshin | $ | 306 |

| Safe Petroleum | $ 2,595 |
| Father's Estate | $ 2,573,889 |
| Mother's Estate | $ 2,573,889 |
| Claim Filed by Father's Estate | $ 66,889 |
| TOTAL | $ 5,307,816 |

Anthony had issued some notes to his parents, and under these notes, he owed $2,573,889 to his father and another $2,573,889 to his mother; but at the time Anthony conveyed his one-fifth interest in the farmland, an action on these notes would have been barred by a statute of limitations. The notes still had an important legal consequence. On March 23, 2007, in Estate of Harold A. Markert, No. 96-P-5, and Estate of Juanita W. Markert, No. 99-P-6, the Brown County circuit court entered summary judgment in favor of the administrators of those estates, finding that they had "no obligation to distribute any share of either estate to Anthony L. Markert[] which would otherwise have been distributed to him but for his indebtedness to both estates, which [was] greatly in excess of what otherwise would have been his distributive share." See Herbolsheimer v. Herbolsheimer, 321 Ill. App. 285, 291, 53 N.E.2d 18, 21 (1944) ("the defense of the statute of limitations is not available to an heir of an estate when the executor or administrator is seeking to collect notes due from one of the heirs, or charge the amount of the notes against the distributive share of the heir").

## II. ANALYSIS

In the present case, plaintiff moved for a summary judgment that Anthony's transfer of his one-fifth interest in the farmland to his children was a "fraud in law" under section 6(a) of the Act (740 ILCS 160/6(a) (West 2004)). That section

provides as follows:  "A transfer made *** by a debtor is fraudulent as to a creditor whose claim arose before the transfer was made *** if the debtor made the transfer *** without receiving a reasonably equivalent value in exchange for the transfer *** and the debtor was insolvent at that time ***."  740 ILCS 160/6(a) (West 2004).  In the hearing on his motion for summary judgment, plaintiff argued that Anthony was "insolvent" within the meaning of section 3(a) of the Act, which provides:  "A debtor is insolvent if the sum of the debtor's debts is greater than all of the debtor's assets at a fair valuation."  740 ILCS 160/3(a) (West 2004).

Defendants argue the trial court erred in finding that Anthony was insolvent at the time of the conveyance.  They argue that Anthony "became insolvent only after the actions *** barring [him] from receiving his share of the [e]states[,] estimated between $200,000 and $250,000."  It was not until November 2004--months after the conveyance to his children--that Anthony was served a summons and a copy of the complaint in which his family "assert[ed] the old notes as a set[]off against his share of his parents' estates."  It was his "siblings['] subsequent actions[,] after the transfer[,] [that] made him insolvent," namely, their obtaining a judicial determination that he was entitled to no distribution from his parents' estates.  Until then, he was solvent, so he argues; an action on the notes would have been time-barred.

The fallacy of this argument lies in the assumption that on April 13, 2004, when Anthony conveyed his one-fifth interest in the farmland to his children, his interest in his parents' estates was really and truly worth $200,000.  Anthony had not yet received the $200,000.  The asset was contingent, and we must consider its expected value as of April 13, 2004.  See In re Xonics Photochemical, Inc., 841 F.2d 198, 200 (7th

Cir.1988) ("It makes no difference whether the firm has a contingent asset or a contingent liability; the asset or liability must be reduced to its present, or expected, value before a determination can be made whether the firm's assets exceed its liabilities"). Its value depended on the likelihood that the contingency would occur. Cf. Covey v. Commercial National Bank of Peoria, 960 F.2d 657, 659 (7th Cir. 1992) ("to find the value of a contingent liability[,] a court must determine the likelihood that the contingency will occur"). Anthony's receipt of $200,000 from his parents' estate was contingent on there being no setoff. Because it cannot be assumed that the administrators of the estates of Harold and Juanita Markert would ignore an indebtedness to the decedents in the amount of $5,147,778, Anthony's interest in his parents' estates was worth nothing on April 13, 2004, when he executed the quitclaim deed. The record gives us no reason to expect that a hypothetical buyer in an arm's-length transaction would have been willing to pay anything for that contingent asset. When we subtract the $200,000 from Anthony's assets (by reason of the setoff) and the $5,147,778 from his debts (by reason of the statute of limitations), his assets total $60,894 ($260,894 minus $200,000), and his debts total $160,038 ($5,307,816 minus $5,147,778). His debts exceeded his assets, and he was "insolvent," according to the itemization that defendants have provided in the statement of facts in their brief.

### III. CONCLUSION

For the foregoing reasons, we affirm the trial court's judgment.

Affirmed.

KNECHT and COOK, JJ., concur.